IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KENNETH ALLEN THOMAS, | ) |
| Plaintiff, | ) |
| vs. | ) CV-98-BU-0688-S |
| OFFICER ROBERT E. LONG, | ) |
| Defendant. | ) |

**ENTERED**
SEP 29 2000

MEMORANDUM OPINION

This is a civil action pursuant to 42 U.S.C. § 1983 in which the *pro se* plaintiff, Kenneth Allen Thomas, alleges that his constitutional rights were violated during his incarceration at the Blount County Correctional Facility in Oneonta, Alabama. The sole defendant in this action is Officer Robert E. Long. Plaintiff claims that defendant Long used excessive force against him in retaliation for a grievance plaintiff had filed against him an hour earlier. As relief for the alleged constitutional violations, plaintiff seeks compensatory damages, a mental evaluation of the defendant, and to have the defendant removed from "law enforcement all together," arrested, and incarcerated. On January 8, 1999, the court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to the defendant and requesting that he file a special report addressing the factual allegations

of the plaintiff's complaint. The defendant was advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. By the same Order, plaintiff was advised that after he received a copy of the special report submitted by the defendant he should file counter affidavits if he wished to rebut the matters presented by the defendant in the special report. Plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendant's special report. On March 22, 1999, the defendant filed a special report accompanied by copies of plaintiff's medical records, incident reports, grievance forms, disciplinary hearing notes, the Blount County Inmate Handbook and excerpts from the Blount County Correctional Facility Policy and Procedure Directive along with the defendant's affidavit and the affidavits of Billy R. Tate, Mack Kent, Robert L. Miller and Tammy Dover.[1] Thereafter, plaintiff was notified that he would have twenty days to respond to the motion for summary judgment, filing affidavits or other material if he chose. Plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On April 6, 1999, plaintiff

---

[1] The court notes that the affidavits of Billy R. Tate, Robert L. Miller and Mack Kent were insufficient when filed along with the special report because Tate and Miller's affidavits were copies which did not bear original signatures and the affidavit of Mack Kent was not signed. However, the defendant has been allowed to substitute affidavits bearing the original signatures of Billy R. Tate, Robert L. Miller and Mack Kent for the insufficient affidavits which were filed along with his special report. The substitute affidavits were filed on April 2, 1999.

filed a Response to the Special Report. Plaintiff also filed Initial Disclosures which were deemed filed February 10, 2000 and a "Response to Motion of Summary Judgment" on February 16, 2000.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial

and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

4

## ALLEGATIONS OF THE PARTIES

According to plaintiff, on February 13, 1998, while he was incarcerated in the Blount County Correctional Facility, he filed a grievance against the defendant (plaintiff's complaint page three). An hour after plaintiff had filed the grievance, the defendant unlocked plaintiff's cell, came in, woke plaintiff up and broke his radio (plaintiff's complaint page three). The defendant then ordered plaintiff to get up on the wall (plaintiff's complaint page three). Plaintiff claims that he did as instructed by the defendant, but the defendant sprayed him, punched him and hit him with a steel rod anyway (plaintiff's complaint page three). He states that the defendant then handcuffed him and shoved his face into the wall (plaintiff's complaint page three). Plaintiff claims further that the defendant pushed him out of the cell, across the cellblock, into a tray cart and then into a closed door face first (plaintiff's complaint page four). Plaintiff claims that the defendant then hit him with the rod again. He claims further that the defendant continued to push him until they reached D-unit where he rammed plaintiff into a support pole and hit him with the rod again. Plaintiff claims that the defendant then pushed him onto the floor, sprayed him again and then left him in the cell with his hands cuffed behind him (plaintiff's complaint page 4). Plaintiff contends that he was blinded and could not breathe the entire time because of the spray (plaintiff's complaint page 4).

The defendant's version of the facts differ greatly from the plaintiff's version. According to the defendant, on February 13, 1998, he was assigned to the second shift, which

is the 3:00 p.m. to 11:00 p.m. shift, at the Blount County Jail (defendant's affidavit page one). He states that plaintiff was housed in the C-unit and was serving a twenty-four (24) hour lockdown due to an incident which had occurred the previous day (defendant's affidavit page one). Defendant Long states that while he and Officer Bill Tate were serving dinner to the inmates, he opened the door to plaintiff's cell and noticed that the plaintiff had his radio hanging from his bed (defendant's affidavit page two). The defendant states that he immediately noticed the radio because he had previously given plaintiff a verbal warning regarding the same radio which at that time had been hanging from the vent in plaintiff's cell (defendant's affidavit page two). He asserts that he had instructed plaintiff to remove the radio from the vent. Defendant Long states that this time, he instructed the plaintiff to hand him the radio so that he could place it in lockup along with plaintiff's other personal property (defendant's affidavit page two). Defendant Long states that plaintiff used profanity and informed the defendant that he was not getting the radio. The defendant states that he instructed plaintiff to give him the radio several times, but the plaintiff refused to comply each time (defendant's affidavit page two). He states that the final time plaintiff refused to comply with his instruction, he reached over and removed the headphones from the top bunk himself. He states that at that point, plaintiff grabbed the radio and threw it on the floor breaking it into several pieces (defendant's affidavit page two). Defendant Long states that he then instructed plaintiff to place his hands on the wall, but plaintiff refused to comply. Defendant Long states that he instructed plaintiff three more times to place his hands on the

wall, but plaintiff refused each time (defendant's affidavit page two). Defendant Long states that he then withdrew his Freeze + P spray from its holder and that plaintiff then complied with the instruction by placing his hands on the wall (defendant's affidavit page two). Defendant Long returned the Freeze + P spray to its holder. Defendant Long states that he then removed his handcuffs from his belt and instructed plaintiff to give him his left hand, but plaintiff refused. He states that he again instructed plaintiff to give him his left hand, but plaintiff again refused (defendant's affidavit page two). Defendant Long states that he turned his head to call for assistance from Officer Tate who was serving the other inmates their meals at the time and did not appear to be cognizant of the problems in the cell. He states that the plaintiff then removed his hands from the wall and turned to face defendant Long. He states that he again instructed plaintiff to place his hands on the wall and plaintiff refused stating that the defendant was going to have to spray him (defendant's affidavit page two). Defendant Long states that he then removed the Freeze + P from its holder and started to spray the plaintiff who moved toward him. The defendant states that the plaintiff shoved his left hand resulting in the defendant receiving a burst of Freeze + P to the left side of his face. The defendant states that he sprayed again, this time hitting plaintiff in the face with the spray (defendant's affidavit page three). Defendant Long states that he then instructed plaintiff to put his hands on the wall and plaintiff complied. He states that he next instructed plaintiff to give him his left hand, but he refused. After a second instruction and refusal, the defendant hit plaintiff in the back with his right forearm (defendant's affidavit page three).

The defendant states that the plaintiff then turned from the wall and tried to face the defendant who shoved plaintiff to the back of the cell and withdrew his baton. Defendant Long states that he informed the plaintiff that he would strike him if he did not put his hands behind his back. The defendant states that the plaintiff complied and he placed the handcuffs on him (defendant's affidavit page three).

Defendant Long states further in his sworn affidavit that Officer Tate then arrived in the cell unit. Defendant Long states that plaintiff was yelling, using profanity and behaving in a belligerent manner. He states that he informed Officer Tate that he was going to move plaintiff to the D-unit which is comprised of single cells and is commonly used to house inmates who are on lock down because of a discipline problem or who are maximum security inmates. Defendant Long states that as he was escorting plaintiff to the D-unit and was leading plaintiff around the food cart toward the unit door, plaintiff dropped his left shoulder and rammed the food cart knocking several trays off the cart (defendant's affidavit page three). Defendant Long states that he attempted to tighten his grip on plaintiff, but plaintiff continued to resist him. Defendant Long states that he then used his baton, which was still in his right hand, to strike plaintiff on the outside of his right leg, approximately four to five inches above the knee (defendant's affidavit page three). Defendant Long states that he then pinned plaintiff against the unit door and regained his grip on plaintiff's handcuffs. He states that at this point, plaintiff was compliant. Defendant Long escorted plaintiff to cell D-104. Once in the cell, plaintiff asked if defendant Long was going to remove the handcuffs.

Defendant Long then instructed plaintiff to turn around and bend over. Plaintiff complied and defendant Long then gauged and double locked the handcuffs. He states that the plaintiff then turned around and attempted to exit the cell. Defendant Long secured the cell door. Defendant Long informed Central Control that plaintiff had been secured in D-104 and that he was still handcuffed. Defendant Long returned to C-unit to assist Officer Tate in serving the remainder of the meals and cleaning up the food trays which were knocked over during the incident. Defendant Long contends that the minimal amount of force he used upon plaintiff was necessary in light of both plaintiff's verbal belligerence and the physical threat plaintiff posed to his safety and security and to the safety and security of the other inmates.

Officer Tate states in his sworn affidavit that when he entered the C-unit on February 13, 1998, he noticed plaintiff was handcuffed and Officer Long was escorting him out of the cell (Officer Tate's affidavit page one). He states that as defendant Long and plaintiff headed toward the cell door and approached the carts where the food trays had been placed, he observed plaintiff intentionally ram into the carts causing the trays of food to be knocked over (Officer Tate's affidavit page two). Officer Tate states further that he observed plaintiff jerk away from defendant Long as if he were attempting to escape from his hold (Officer Tate's affidavit page two). He states that he saw defendant Long bring out his baton and strike the plaintiff on the leg (Officer Tate's affidavit page two). He states that Officer Long then escorted plaintiff across the hall to another unit. Officer Tate states further that within a short time span, defendant Long asked him to go to the unit and take the cuffs off of

9

plaintiff. He states that when he arrived at the cell, plaintiff had already pried one cuff from his wrist completely destroying the cuff (Officer Tate's affidavit page two). He took the other cuff off of plaintiff. Officer Tate states further that when he entered the cell, plaintiff did not appear to have any apparent problems other than injuries which could have been connected to the amount of effort it took to pry the cuff from his wrist. He states that he did not see any bruises, scars or marks about plaintiff's face or legs (Officer Tate's affidavit page two).

## DISCUSSION

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). The Supreme Court held in *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6. In extending *Whitley* to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both

10

> implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Id.* at 6-7 (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. The *Hudson* Court made it clear that the extent of injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* at 7.

Furthermore, in evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment. *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987). While this deference, "does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Id.* Quoting *Albers*, 475 U.S. at 322. Where the only question concerns the reasonableness of the force used by a prison official, the defendants will ordinarily be entitled to judgment as a matter of law.

11

In the present case, the facts are in dispute as to what occurred between plaintiff and defendant Long. The plaintiff claims that he did everything possible that the defendant instructed him to do, but he was still sprayed with Freeze + P, punched and hit with a steel rod. In contrast, the defendant states that plaintiff failed to comply with orders, was verbally belligerent and physically threatened his safety and security as well as the safety and security of the other inmates. Because a dispute of material fact exists, summary judgment is not appropriate. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## CONCLUSION

Based on the foregoing, the defendant's motion for summary judgment is due to be DENIED. The Court finds a disputed issue of material fact such that the defendant's motion for summary judgment is due to be denied.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum of Opinion.

DONE this 29th day of September, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE