IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA AM 9: 40
SOUTHERN DIVISION

U.S. ....
N.D. OF ALABAMA

KENNETH ALLEN THOMAS,            )
                                )
        Plaintiff,              )
                                )
vs.                             )        CV-98-BU-0688-S
                                )
OFFICER ROBERT E. LONG,         )
                                )
        Defendant.             )

**ENTERED**

MAR 2  2001

## MEMORANDUM OPINION

In this civil action filed  pursuant to 42 U.S.C. § 1983, the *pro se* plaintiff, Kenneth Allen

Thomas,  alleges that his constitutional rights were violated during his incarceration in the Blount

County Correctional Facility in Oneonta, Alabama.  Plaintiff names Officer Robert E. Long as the

sole defendant and claims that Defendant Long used excessive force against him as punishment for

an institutional grievance Plaintiff had filed against Long.  As relief for the alleged constitutional

violations, Plaintiff seeks money damages, a mental evaluation of the defendant, and to have the

defendant removed from "law enforcement all together."[1]

In accordance with the Court's usual practices, Defendant Long was directed to file a special

report addressing the factual allegations of plaintiff's complaint.  Defendant Long filed a special

report accompanied by his affidavit,  the affidavits of Billy R. Tate, Mack Kent, Robert L. Miller

---

[1]  Plaintiff also seeks to have Defendant Long arrested and incarcerated.  A private citizen,
however,  has no "judicially cognizable interest in the prosecution or non-prosecution of another."  *Linda
R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)  This Court is therefore without authority to grant this
particular relief.  *See Otero v. United States Attorney General*, 832 F.2d 141 (11th Cir. 1987).



and Tammy Dover,[2] copies of plaintiff's jail medical records, incident reports, grievance forms, disciplinary hearing notes, the Blount County Inmate Handbook, and excerpts from the Blount County Correctional Facility Policy and Procedure Directive. The parties were thereafter notified that the special report filed by the Defendant would be construed as a motion for summary judgment, and the Plaintiff was notified of the provisions and consequences of FED. R. CIV. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Plaintiff filed two pleadings in response to the Defendant's motion for summary judgment.

On September 29, 2000, the Court entered an order denying Defendant's motion for summary judgment. A Scheduling Order was subsequently entered by the magistrate judge. The Defendant thereafter sought and was granted permission to depose the Plaintiff. After taking the deposition of Plaintiff, the Defendant filed a second motion for summary judgment, attaching in support thereof excerpts from the deposition of Plaintiff and copies of Plaintiff's hospital records. Plaintiff was thereafter notified that he would have twenty days to respond to the Defendant's motion for summary judgment, filing affidavits or other material if he chose. By this same order, Plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Plaintiff has filed a response to the motion.

---

[2]  The affidavits of Billy R. Tate, Robert L. Miller and Mack Kent were insufficient when filed along with the special report because Tate and Miller's affidavits were copies which did not bear original signatures and the affidavit of Mack Kent was not signed. Defendant Long was allowed, however,  to substitute affidavits bearing the original signatures of Billy R. Tate, Robert L. Miller and Mack Kent for the insufficient affidavits which were filed along with his special report.

## EXCESSIVE FORCE

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).   In *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992), the Supreme Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."   In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson v. McMillian*, 503 U.S. at 6 (citations omitted).  With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the force used was excessive. These factors include: 1) "the need for application of force"; 2) "the relationship between that need and the amount of force used"; 3) "the threat 'reasonably perceived by the responsible officials'"; 4) "any efforts made to temper the severity of a forceful response"; and 5) "the extent of the injury suffered by the inmate."  *Id*. at 7.

The evidence presented by the parties in connection with the Defendant's first motion for summary judgment clearly presented a dispute of material fact.  In essence, Plaintiff claimed that

3

although he did everything the Defendant ordered him to do, the Defendant sprayed him with a chemical spray, punched him and hit him with a steel rod, then handcuffed him and pushed him out of the cell into a tray cart and then into a door face first, then hit him with the steel rod again, rammed him into a support pole, hit him with the steel rod again, pushed him onto the floor, then sprayed him with chemical spray again and left him in a cell with his hands cuffed behind him. In contrast, the Defendant asserted that Plaintiff failed to comply with his orders, was verbally belligerent and physically threatened his safety and security, as well as the safety and security of the other inmates, and that the force he used against Plaintiff was only that necessary to restore order in the facility. In support of his second motion for summary judgment, the Defendant has presented excerpts from Plaintiff's deposition. The Defendant alleges that Plaintiff's deposition testimony "differs substantially from his [previously submitted pleadings] and reveals additional basis for summary judgment." Defendant's Memorandum Brief (Document #44) at 1, n.1.

At the outset, it is noted that the Defendant did not submit the entire deposition testimony of the Plaintiff, who is an inmate proceeding *pro se*, and that Plaintiff has complained that Defendant has "manipulated [his] words by leaving key words out." Plaintiff's Response (Document #47) at 2. Plaintiff also complains that he had "no idea what a deposition was" until the Defendant's attorney arrived at the prison and that he "was in no way prepared" for the deposition. *Id.* at 1.

Early in the deposition, Plaintiff was asked by defense counsel to describe the incident that occurred February 13, 1998. Plaintiff responded:

I believe the first thing that happened, I had my radio hanging on a vent and [Officer Long] come by and told me that I wasn't supposed to have my radio hanging on any fixtures. So I got it down, laid it on my bed. It's bunk beds. I was on the bottom bunk. There's a top bunk right over me, so I hung it up on the top bunk and laid in bed listening to it. I didn't think that was a fixture. I thought a bed was furniture. Then [Officer Long] come by and I didn't even know he was in my cell. I was laying there asleep with my headphones on.

4

He started yelling, woke me up and he asked me for my radio, and I told him no. I don't know if I told him no or I just wouldn't give it to him. And he snatched it and throwed it on the ground and smashed it and he told me to get up. I think I was cussing him by then. He sprayed me – well, he put me up against the wall first and told me to – he said, give me your hands, put your hands behind your back or something like that. And I wouldn't do it.

And then he punched me in the back. I don't know if it was a fist or an elbow. I know I got hit in the back. And I think he asked me to put my hands behind there again and I didn't do it. He sprayed me in the face and then I was blind and couldn't hardly breathe after that. But I remember getting hit by a stick and led out. I remember leaving out, going out of the cell, but when you get sprayed, you can't see nothing. Your eyes just go totally tight and you can't breathe, snot is flying everywhere. [Officer Long] was talking to another officer. I didn't know who it was, I couldn't see him. He carried me out and I run into the tray cart. And then he started beating me with the stick, which is an iron rod that he carries. Then he slammed me up against the door. I think he might have hit me again. I'm not positive.

And then he opened the door and he let me through the hall to D block, went through there and then he was opening the door and pushed me in my cell. And I asked him if he was going to take the handcuffs off of me. He said, yeah, back up over here. And when I did, he just made the handcuffs tighter and pushed me down, and I think he may have even sprayed me again. And he slammed the door and left me there. And then they didn't come take the handcuffs off, so I pried them off. I was cussing him the whole time. I didn't mention that, but I was. I will admit that. I done it. I pried the handcuffs off and broke them into little pieces.

That is where the charges come from, the harassment for cussing him and the criminal mischief for breaking his handcuffs. I went to the hospital later. He didn't take me. And I had bruises on my legs where he hit me. Big bruises. I mean about a foot long, about four inches wide on the back of my legs. I was sore from being jerked around. The give me a muscle relaxer and some kind of pain killer and sent me back and put me in my cell with the pepper spray still on me. They wouldn't let me take a shower. That was about it.

Plaintiff's Deposition (Exhibit A to Document #43) at 23-26. Plaintiff also indicates that after Defendant Long handcuffed him and took him out of his cell he "was struggling" because the Defendant had his "arms lifted up just driving [him] around like [he] was a wheelbarrow" and it was "pretty painful" as he has "a steel rod in [his] arm." *Id*. at 37. It was at this point that plaintiff collided with the steel tray cart. There is no indication by Plaintiff that he continued to struggle after

5

colliding with the cart. He states, however, that Defendant Long then "pushed" him into the cell unit door and that he "hit the cell unit door pretty hard with [his] face." *Id.* at 40. At that point, Defendant Long hit plaintiff on the right leg with his stick. *Id.* at 40-41. Plaintiff acknowledges that this may have been the first time during the altercation that Defendant Long struck him with the stick, but Plaintiff also states that Defendant Long struck him "four times before the whole altercation was over with." *Id.* Much later, Plaintiff concedes that "the only time [he has] a specific recollection of [Officer Long] striking [him] with the baton is after [he] ran into the food cart . . .[at] the C unit door, going out." *Id.* at 70.

In considering a motion for summary judgment, the court must determine whether the moving party -- in this case, Defendant Long -- is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

> Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence. It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."

*Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996).

In this case, it is undisputed that there was a physical altercation between Plaintiff and Officer Long. The parties do not agree, however, on the circumstances surrounding this altercation. While plaintiff originally claimed that he did everything Officer Long instructed him to do, his deposition testimony indicates that he failed or refused to obey Officer Long's orders to surrender his radio and to put his hands behind his back, then "was struggling" as he and Officer Long exited

6

his cell. Plaintiff's deposition testimony does not, however, show that Plaintiff continued to struggle after colliding with the tray cart. According to Plaintiff's deposition testimony, after his collision with the tray cart, Officer Long pushed him into a cell door face first and struck him on the leg at least once with an iron rod. Moreover, Plaintiff's original summary judgment materials indicates that, after he collided with the tray cart, Officer Long also rammed him into a support pole.

There are, in fact, inconsistencies in Plaintiff's original summary judgment materials and his deposition testimony. These inconsistencies do not, however, negate that a dispute of material fact exists as to whether the force used against plaintiff was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Even if Plaintiff's deposition testimony that he failed to obey Officer Long's orders and "was struggling" as they left his cell is true, that does not foreclose a finding that <u>after</u> Plaintiff ceased to struggle, Officer Long continued to apply force. *See Meyers v. M/V Eugenio C.*, 876 F. 2d 38, 39-40 (5th Cir. 1989). Moreover, where a defendant seeks to make use of inconsistencies in a plaintiff's deposition testimony to support his motion for summary judgment, those inconsistencies are best resolved by a trier of fact. *Syzmanski v. Rite-Way Lawn Maintenance Co, Inc.*, 231 F. 3d 360, 365-66 (7th Cir. 2000). Here, as in *Patrick v. LeFevre*, 745 F. 2d 153, 159 (2d Cir. 1984), the alleged inconsistencies in Plaintiff's deposition testimony and his previously submitted materials amount to nothing more than a challenge to his credibility which "accentuates the factual conflicts present in this suit and punctuates the need for a full factual exposition at which these disputes can ultimately be resolved." The second motion for summary judgment filed by Defendant Long is therefore due to be denied.

7

### EXHAUSTION REQUIREMENT

Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

In his second motion for summary judgment (Document #43), the Defendant asserts, for the first time, that Plaintiff "failed to file a claim with the Alabama State Board of Adjustment concerning the incident made the basis of this lawsuit" and that Plaintiff has therefore failed to exhaust his administrative remedies.

The Alabama State Board of Adjustment is a legislatively created body with the power and jurisdiction to hear specifically enumerated claims against the State of Alabama, its agencies, commissions, boards, institutions, or departments. *See* §§ 41-9-60, 41-9-62, ALA. CODE. The Alabama Supreme Court has held that the purpose of the Board of Adjustment is "to extend[ ] a measure of compensation or relief to citizens entitled thereto, who unfortunately suffered injury occasioned by the state or one of its agencies, commissions, boards or institutions or departments, while engaged in the performance of the sovereign functions or duties of the state, and for which the rule of sovereign immunity exempts the state and its respective agencies, commissions, boards, institutions or departments from any other duly recognized form of legal action to compensate for such unlawful act and proximate injury." *State ex rel. McQueen v. Brandon*, 12 So.2d 319, 325 (1943). Thus, "[t]he Board of Adjustment has jurisdiction over claims against the state *that are not justiciable in the courts because of the state's constitutional immunity from suit*." *Matthews v. Alabama Agricultural & Mechanical University*, 716 So.2d 1272, 1281 (Ala. Civ. App. 1998)

8

(emphasis added) (*citing Lee v. Cunningham*, 176 So. 477 (1937)). *Accord Vaughan v. Sibley*, 709 So.2d 482, 486 (Ala.Civ.App.1997) (the "Board of Adjustment has jurisdiction over claims against the state that are not justiciable in the courts because of the state's constitutional immunity from being made a defendant"). It is also clear that the Board of Adjustment lacks jurisdiction over claims cognizable in the Alabama courts. *Hawkins v. State Board of Adjustment*, 7 So. 2d 775, 776 (Ala. 1942).

At the time of the incident about which Plaintiff complains, Defendant Long was a correctional officer at the Blount County Detention Facility, serving at the pleasure of Sheriff Larry Staton. As such, Defendant Long would have been entitled to sovereign immunity under the Eleventh Amendment from claims for money damages stated against him in his official capacity. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989) (Eleventh Amendment bars § 1983 lawsuits against county sheriffs in their official capacities); *Carr v. City of Florence,* 916 F.2d 1521 (11th Cir. 1990) (sheriff's Eleventh Amendment immunity extends to deputy sheriffs because of their "traditional function under Alabama law as the sheriff's alter ego"). As is required by 28 U.S.C. § 1915A, this Court screens all complaints filed by prisoners prior to the service of process. Any claims for money damages stated against a county sheriff or his deputies in their official capacities are dismissed prior to service pursuant to 28 U.S.C. § 1915A(b)(2) and the Eleventh Amendment.

Plaintiff did not, in his complaint or in any other document submitted to the Court, state his excessive force claim against Defendant Long in his official capacity. Consequently, the claim has, since the inception of this case, been treated by this Court as stated against Defendant Long in his *individual capacity only*. Where a § 1983 claim is stated against a defendant in his individual capacity, he is *not* entitled to Eleventh Amendment immunity and the state courts, as well as in this

9

court, have jurisdiction over such a claim.[3]  It therefore clear that the Board of Adjustment would have no jurisdiction over a claim stated against a defendant in his individual capacity only.  As the Alabama Court of Civil Appeals has recently observed:  "Because the Board of Adjustment's purpose is to provide for a measure of compensation for injury suffered at the hands of those entitled to immunity, it certainly seems inappropriate for a claimant to be required to submit a claim to the Board when the persons who are responsible for the injury are not immune from suit." *Horton v. Briley*, ___ So. 2d ___, ___ [2001 WL 29327 at 3] (Ala.Civ.App. 2000).[4]

It is noted that the Blount County Detention Facility has in place an inmate grievance procedure.  Document #17, Exhibit F at 12.  Defendant Long has stated in his affidavit that he is aware that Plaintiff filed an institutional grievance regarding the incident that is the basis of this action.  Long Affidavit (Document #18) at 5.  It therefore appears that Plaintiff has, in fact, exhausted his administrative remedies with regard to the claim against Defendant Long in *his individual capacity*.

---

[3]  State courts and federal courts have concurrent jurisdiction over claims filed pursuant to 42 U.S.C. § 1983. *Felder v. Casey*, 487 U. S.  131, 139 (1988); *Arkansas Writer's Project, Inc., v. Ragland*, 481 U. S.  221, 234 (1987).

[4]  Defendant Long has submitted a copy of a recommendation entered by a magistrate judge in an excessive force case filed in the United States District Court for the Middle District of Alabama. in which the magistrate judge found that the plaintiff had failed to exhaust his administrative remedies by failing to file a claim with the Board of Adjustment. *Garner v. Weeks*, CV 99-D-545-S, Recommendation at 5-6. It appears, however, that the magistrate judge was addressing the claim as stated against the defendant in his official capacity.  In any event, cases decided in the United States District Court for the MiddleDistrict are not binding on this Court.

<u>CONCLUSION</u>

Based on the foregoing, the Defendant's second motion for summary judgment (Document #43) is due to be DENIED. The Court expressly finds that a disputed issue of material fact exists and that summary judgment is therefore not appropriate at this time.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion.

DONE this 1ST day of March, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE

11